T.C. Memo. 2001-96

UNITED STATES TAX COURT

BUD RAYMOND, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18162-99.                    Filed April 17, 2001.

Bud Raymond, pro se.

Andrew R. Moore, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent determined a deficiency of

$140,981 in petitioner's 1995 Federal income tax.  After

concessions,[1] the issues for decision are (1) the amount realized

_____

[1] With regard to items listed in the notice of deficiency,
respondent concedes that petitioner is entitled to a $3,000
capital loss relating to the sale of baseball cards and $23,935
of deductions on Schedule A, Itemized Deductions.  As to

(continued...)

by petitioner on account of receiving various promissory notes, (2) whether petitioner is entitled to use the installment method under section 453 to report gain realized from the sale of single family homes, and, if so, (3) whether petitioner properly reported his income according to that method.[2]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, stipulation of settled issues, and the accompanying exhibits are incorporated herein by this reference. At the time petitioner filed the petition, he resided in Atwater, California.

During 1995, petitioner operated as a sole proprietorship under the name Bud G. Raymond Construction. For three generations, the members of the Raymond family have been involved in the construction business. Petitioner and his father and son have been home builders. Petitioner became involved in the construction business when he helped his father build

---

[1](...continued)
subsequent determinations, petitioner and respondent agree that petitioner must report interest income of $42,072, rental income of $18,849 on Schedule E, Supplemental Income and Loss, income of $1,027 on Schedule F, Profit or Loss From Farming, other income of $4,694, and Social Security benefits of $8,462. Petitioner and respondent also agree that computational adjustments may be required for self-employment taxes and the deduction associated with the self-employment taxes imposed.

[2] All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

approximately 30 homes. Later on his own, as described below, petitioner developed a subdivision consisting of homes for low income families; in addition, he also built and sold custom designed homes.

In 1992, petitioner purchased a tract of land which he subdivided into 58 lots and is now known as the Pajaro Dunes subdivision. Petitioner obtained financing from The Savings Bank of Stockton to construct homes in the subdivision. Additionally, he hired his son's construction company to supervise the construction of the subdivision. Fourteen homes were completed in 1994, while 44 homes were completed in 1995.

Petitioner hired Rancho Real Estate (Rancho) to market and sell the homes. Rancho placed advertisements in local newspapers and posted signs to market the properties. In 1994, Rancho procured the sale of 14 homes. The next year, in 1995, the remaining 44 homes were sold.

The purchase prices of the homes ranged from $63,900 to $79,900. To facilitate the sales in 1995, petitioner accepted promissory notes for part of the purchase prices on 41 of the 44 homes sold that year and requested second deeds of trust to secure the notes.[3] The promissory notes range in principal

_____

[3] The typical financing structure consisted of the following arrangement (typically known as an 80-15-5 mortgage): (1) The Savings Bank of Stockton financing 80 percent of the purchase price with a loan at an 8.5-percent interest rate,

(continued...)

amounts from $5,300 to $12,000, and the aggregate face value of the 41 notes amounts to $423,770. The typical note to petitioner has an interest rate of 10 percent and is subject to amortization over 30 years; after 7 years, however, a balloon payment is due for the outstanding principal balance. As of the time of trial, one note was no longer secured by a second deed of trust as a result of a foreclosure on the first deed of trust, one note had been fully repaid, and the remaining 39 notes were outstanding.

On his 1995 tax return, petitioner, a cash basis taxpayer, did not use the installment method when recognizing income from his construction business. On his Schedule C, Profit or Loss From Business, petitioner did not include the face value of the promissory notes in his gross receipts because he believed that as a cash basis taxpayer he did not have to report that income until he actually received payment. Additionally, on his 1996 through 1999 tax returns, petitioner did not employ the installment method. On his 1995 through 1999 tax returns, petitioner, however, did report the interest income associated with the promissory notes. Respondent determined that the face value of the promissory notes had to be returned as Schedule C

_____

[3](...continued)
amortizable over a 30-year period, and secured by a first deed of trust, (2) petitioner financing the next 15 percent of the purchase price, and (3) the purchaser paying the remaining 5 percent out of his own funds. The principal benefit of this arrangement was that the purchaser avoided the cost of private mortgage insurance.

gross receipts in petitioner's 1995 tax return.

OPINION

Realization and Recognition of Income

Section 1001(a) provides that the gain realized from the sale of property shall be the excess of the amount realized over the adjusted basis. The amount realized consists of "the sum of any money received plus the fair market value of the property (other than money) received." Sec. 1001(b). If the taxpayer has a realized gain (after the calculations of the amount realized and adjusted basis), the taxpayer must generally recognize the entire gain as income. See sec. 1001(c). The tax law, however, provides that for certain sales of property the taxpayer can use the installment method to defer recognition of income. See secs. 451(a), 453, 1001(c).

Under section 453(a), a taxpayer can use the installment method only if there has been an installment sale. An installment sale is a "disposition of property where at least 1 payment is to be received after the close of the taxable year in which the disposition occurs." Sec. 453(b)(1). Using the installment method, the taxpayer recognizes a proportion of the payment received in any given year commensurate with the percentage that the gross profit bears to the total contract price. See sec. 453(c); Wang v. Commissioner, T.C. Memo 1998-127; Berger v. Commissioner, T.C. Memo. 1996-76. Dealer

dispositions, however, are not installment sales; therefore, the gains associated with those dispositions cannot be reported under the installment method. See sec. 453(b)(2)(A).

The Parties' Disagreements

Petitioner and respondent disagree over whether petitioner may use the installment method to report income. Before we evaluate whether petitioner is entitled to use the installment method, we deal with petitioner's assertion at trial that he would have been "lucky" to receive 25 percent of the face value of the promissory notes. Based on the evidence before us, we have found that petitioner received 41 promissory notes (with a total face value of $423,770) secured by second deeds of trust. Petitioner has not introduced any evidence other than his self-serving testimony indicating that the fair market value of the notes was less than the face value. Because petitioner has failed to do so, we conclude that the amount realized includes the total face value of the promissory notes. See Estate of Silverman v. Commissioner, 98 T.C. 54, 61-62 (1992); McShain v. Commissioner, 71 T.C. 998, 1003-1005 (1979); see also Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Tokarski v. Commissioner, 87 T.C. 74, 76-77 (1986).

Petitioner claims that pursuant to section 453, he is entitled to defer the gain relating to the sale of the 41 homes until the promissory notes are converted into cash. Respondent

argues that because petitioner's sales are dealer dispositions, the installment method is unavailable to petitioner pursuant to section 453(b)(2)(A). Petitioner counters that the definitions of a dealer as listed in Black's Law Dictionary 399 (6th Ed. 1990) and Webster's Encyclopedic Unabridged Dictionary of the English Language 371 (1989) lead to the conclusion that one who makes property to sell is not a dealer. Because he constructs homes, petitioner argues that he is not a dealer, and therefore the sales cannot be categorized as dealer dispositions. For the following reasons, we agree with respondent.

Dealer Dispositions

Section 453(b)(2)(A) prohibits the use of the installment method with regard to income from a "dealer disposition". See also sec. 453(a)(1), (b)(1). The term "dealer disposition" includes "any disposition of real property which is held by the taxpayer for sale to customers in the ordinary course of the taxpayer's trade or business." Sec. 453(l)(1)(B). Because Congress has provided the meaning of a dealer disposition, we are precluded from resorting to a dictionary definition of the word "dealer" in deciding the issue in dispute. We therefore analyze whether petitioner falls within the context of section 453(l)(1)(B).

To establish whether a taxpayer has held property for sale to customers in the ordinary course of his trade or business, we

look to the taxpayer's intent at the time he disposes of the property.[4]  See <u>Cottle v. Commissioner</u>, 89 T.C. 467, 487 (1987).  Generally, we look to the following factors when making such evaluation:  (1) The taxpayer's purpose for initially acquiring the property; (2) the purpose for which the property was subsequently held; (3) the extent to which the taxpayer made improvements to the property; (4) the frequency, number, and continuity of sales; (5) the extent and nature of the taxpayer's efforts to sell the property; (6) the character and degree of supervision or control exercised by the taxpayer over any representative selling the property; (7) the extent and nature of the transactions involved; and (8) the taxpayer's everyday business and the relation of realty income to total income.  See <u>id.</u> at 487; <u>Neal T. Baker Enters., Inc. v. Commissioner</u>, T.C. Memo. 1998-302; <u>Nadeau v. Commissioner</u>, T.C. Memo 1996-427; <u>Tollis v. Commissioner</u>, T.C. Memo. 1993-63, affd. without published opinion 46 F.3d 1132 (6th Cir. 1995).  Although no single factor is determinative, the combination of several factors supporting a particular result is sufficient for us to decide whether a taxpayer held property for sale to customers in the ordinary course of a trade or business.  See <u>Cottle v. Commissioner</u>, <u>supra</u> at 488.

---

    [4]  We may, however, consider earlier events to decide what the taxpayer's purpose was at the time of the sale.  See <u>Cottle v. Commissioner</u>, 89 T.C. 467, 487 (1987).

In the instant case, petitioner purchased land with the intention of subdividing it into residential lots and constructing single family residences thereon.  By doing so, petitioner substantially improved the property.  Furthermore, petitioner listed the property with Rancho, and through Rancho, petitioner advertised the property in newspapers and on posted signs.[5]  Over a 2-year period, petitioner sold the 58 homes built in the subdivision.  After adjusting for concessions by the parties, petitioner had gross receipts of $2,750,130 (not including the $423,770 in notes subject to the present dispute), cost of goods sold of $2,680,990, and expenses of $133,119 from his construction business.  Based on the record before us, we conclude that petitioner held the homes in Pajaro Dunes primarily for sale to customers in the ordinary course of his business; therefore, the sales were on account of dealer dispositions and do not qualify as installment sales.  Accordingly, petitioner must include the face value of the notes in his 1995 income.[6]

In reaching our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned

---

[5]  We note that in California an "agent may be authorized to carry forward any ordinary business transaction, the agent's act becoming the act of his principal."  Whittaker v. Otto, 10 Cal. Rptr. 689, 692 (Ct. App. 1961); see also Channel Lumber Co., Inc. v. Simon, 93 Cal. Rptr. 2d 482, 486 (Ct. App. 2000).

[6]  As a result, we need not evaluate whether petitioner correctly applied the installment method.

above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.